## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MOHAMMAD FAHIM MEERAN,  :   No. 3:26cv187
Petitioner  :
   :   (Judge Munley)
   :
   :
   :
v.  :
   :
MICHAEL T. ROSE, Acting Field  :
Office Director of Enforcement  :
and Removal Operations,  :
Philadelphia Field Office,  :
Immigration and Customs  :
Enforcement; and CRAIG LOWE,  :
Warden of Pike County  :
Correctional Facility, et al.,  :
Respondents  :

FILED
SCRANTON

FEB 26 2026

PER_____*Cac*_____
DEPUTY CLERK

## MEMORANDUM

Petitioner Mohammad Fahim Meeran spent the first few days of 2026 employed by a luxury hotel in Center City Philadelphia.  As of this week, not quite 60 days into the new year, the petitioner has been in immigration detention for the remainder of them.[1]

On January 5, 2026, four deportation officers and "other federal partners" conducted an operation specifically targeting Meeran outside his home. (Doc. 1,

---

[1] These facts are derived from records supplied by the United States Department of Homeland Security ("DHS"), (Docs. 5-1 to 5-6), by petitioner, (Docs. 1-3 to 1-5), and the unchallenged factual assertions in the petition for writ of habeas corpus.

Pet. ¶¶ 5, 42; Doc. 5-3).  According to the petitioner, plainclothes agents stopped him on the sidewalk while he was on his way to work. (Doc. 1, Pet. ¶ 42). Meeran believed he was being robbed until the agents displayed their badges. Id. When petitioner provided his identification documents as ordered, agents applied handcuffs and tightened them allegedly to the point of causing injury. Id.

Before the court is Meeran's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  The petitioner is a native of Afghanistan and an immigration detainee in the custody of Immigration and Customs Enforcement ("ICE").  For the reasons set forth below, the petition will be granted and Meeran will be ordered released.

**Background**

On April 27, 2024, Meeran entered the United States at the San Ysidro, California Port of Entry with the intent to seek asylum. (Doc. 1, Pet., ¶ 2).  He used DHS's CBP One app to make his asylum claim and was briefly detained.[2] (Doc. 5-3).  That same date, petitioner was released, granted permission to lawfully enter the United States on a temporary basis, and granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).  United States Customs and Border

---

[2] The CBP One app has been rebranded as CBP Home and is now used for self-deportation purposes.

Protection provided him with an I-94 form. (Doc. 1-5). The period of humanitarian parole was issued for a two-year period *through April 26, 2026*. Id.

At the same time, Meeran was provided with a Notice to Appear, charging him with entering the United States without a valid immigrant visa or other valid entry document in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Doc. 5-2).

Petitioner subsequently filed an asylum application on January 23, 2025. According to the petitioner, he seeks asylum in the United States because he was attacked by agents of the Taliban and survived their assassination attempts. (Doc. 1, Pet. ¶ 40). Meeran's political alignment, religious beliefs, and ethnic background are divergent from the ruling regime. Id. That is, Meeran supported the democratic government of Afghanistan. Id. That government fell after the United States-Taliban Deal, or Doha Accord, in February 2020 and the negotiated withdrawal of American troops from Kabul at the end of the War in Afghanistan.

After being released at the southern border, Meeran made his way to Orange County, California, (Doc. 5-2), and then to Philadelphia, (Doc. 1, Pet. ¶ 41). He obtained an employment authorization from the federal government and took a job at the Center City hotel. Id.

After his arrest outside his home on January 5, 2026, petitioner was transferred to the Philadelphia Federal Detention Center and then to the Pike

3

County Correctional Facility ("Pike CCF"). Id. ¶ 6.   He filed the instant petition while detained at Pike CCF.

According to Meeran, he was not provided a reason for his re-detention. Id. ¶ 43.  Prior to his arrest and detention, Meeran alleges that he was compliant with conditions as imposed on him. Id.  He avers that he does not have any criminal contacts in the United States. Id.  At the time of his arrest and detention, Meeran did not have a pending immigration court date. (Doc. 5-3).  Since that time, he has been placed on the Executive Office of Immigration Review's expedited docket. Id.

According to the respondents, Meeran is an "arriving alien" after the government revoked his humanitarian parole. (Doc. 5 at 17–19).  As respondents argue, Meeran is now detained under 8 U.S.C. § 1225(b)(2)(A) and has been held without a bond hearing pursuant to that section of the Immigration and Naturalization Act ("INA").  Meeran's detention is the product of a revised DHS policy under which individuals present in the United States without admission are treated as applicants for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) rather than discretionary detention under § 1226(a).

The Fifth Circuit Court of Appeals recently issued a decision agreeing with the respondents' view of Section 1225. See Buenrostro-Mendez v. Bondi, --- F.4th ----, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).  Most district

4

court decisions to address the issue hold that individuals like Meeran are not subject to mandatory detention under Section 1225(b)(2)(A), including at least 16 decisions from jurists in the Middle District of Pennsylvania.[3]

Despite the lack of notice and hearing, the government asserts that Meeran's detention does not violate due process because he has not been detained long enough. (Doc. 5 at 31–33). But since the petitioner was given no notice of his humanitarian parole termination, he is detained according to a statute that does not apply to him, and any amount of detention violates due process under these circumstances, the petition for a writ of habeas corpus will be granted. Meeran will be ordered released.

---

[3] See Mamatkulov v. Lowe, No. 3:26CV99, 2026 WL 456917, at *4 (M.D. Pa. Feb. 18, 2026); Diallo v. Lowe, No. 3:26CV286, 2026 WL 458294, at *5 (M.D. Pa. Feb. 18, 2026); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *5 (M.D. Pa. Feb. 13, 2026) (Wilson, J); Patel v. O'Neill, No. 3:25-CV-02289, 2026 WL 323121, at *6 (M.D. Pa. Feb. 6, 2026) (Mehalchick, J.); Viantsko v. Lowe, No. 4:25-CV-02523, 2026 WL 313473, at *4 (M.D. Pa. Feb. 5, 2026) (Brann, C.J.); Carrero Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4, 2026) (Brann, C.J.); Gonzalez Centeno v. Lowe, No. 3:25CV2518, 2026 WL 94642, at *4 (M.D. Pa. Jan. 13, 2026), adhered to, No. 3:25CV2518, 2026 WL 196513 (M.D. Pa. Jan. 26, 2026); Vadel v. Lowe, No. 3:25-CV-02452, 2025 WL 3772059, at *6 (M.D. Pa. Dec. 31, 2025) (Mehalchick, J.); Ramirez-Montoya v. Rose, No. 3:25-CV-02411, 2025 WL 3709045, at *5 (M.D. Pa. Dec. 22, 2025) (Mehalchick, J.); Samassa v. Lowe, No. 1:25-CV-02197, 2025 WL 3653751, at *2 (M.D. Pa. Dec. 17, 2025); Quispe v. Rose, No. 3:25-CV-02276, --- F.Supp. 3d ----, 2025 WL 3537279, at *6 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.); Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) (Mariani, J.); Hernandez v. Rose, No. 1:25-CV-2221, 2025 WL 3284447, at *2 (M.D. Pa. Nov. 25, 2025) (Neary, J.); Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility, No. 3:25-CV-01896, 2025 WL 3522932, at *11 (M.D. Pa. Nov. 13, 2025) (Camoni, M.J), report and recommendation adopted in part, rejected in part on other grounds, No. 3:25-CV-01896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.).

**Jurisdiction**

Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Meeran filed the instant petition while he was detained within the jurisdiction of this court, and he is still currently in ICE custody within this court's jurisdiction.  Petitioner asserts that his continued detention violates his right to due process.[4]  He also asserts that the wrong provision of the INA is being used to justify his potentially indefinite detention.  Thus, the court has habeas jurisdiction over Meeran's petition.[5]  Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

**Analysis**

**1. Section 1226(a) Applies to Meeran, Not Section 1225(b)(2)(A)**

This case, like many others before it, turns on whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) applies to the petitioner.  From a legal standpoint, there is no decision of the Supreme Court or the Third Circuit Court of Appeals to guide the analysis.  Of the district courts to rule on the issue—and there are

---

[4] The Fifth Amendment entitles noncitizens to due process of law in the context of removal proceedings, and thus, they are entitled to notice and an opportunity to be heard, appropriate to the nature of the case. See Trump v. J. G. G., 604 U.S. 670, 673 (2025) (citing Reno v. Flores, 507 U.S. 292, 306 (1993); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

[5] The government has not challenged subject-matter jurisdiction in this case.

many—no single decision binds the court in making a determination, not even a previous decision of the undersigned.  See Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011).  The divided decision of the Fifth Circuit in Buenrostro-Mendez may only be considered for its persuasive value, or lack thereof.  As for the majority and minority views on Section 1225(b)(2)(A), it goes without saying that no legal dispute is resolved by counting noses. See Shurtleff v. City of Bos., Massachusetts, 596 U.S. 243, 256 (2022).  Furthermore, despite the frequently recurring issues found in many immigration-related habeas petitions, each case must be considered on an "ad hoc basis" according to the matters at issue. Diallo v. Bondi, No. CV 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026) (Rufe, J.).

After reviewing Meeran's circumstances on an individual basis, the court reaches the same result as it has on several prior occasions with other petitioners.

Briefly, Section 1225(b)(2)(A) provides: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).   Individuals detained under Section 1225 are not entitled to a bond hearing. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) (Alito,

J., plurality op.) ("And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

"Applicant for Admission" — Section 1225(a)(1) provides that "[a]n alien present in the United States who has not been admitted (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).  Definitionally, all unadmitted persons, including Meeran, are "applicants for admission."

"Alien Seeking Admission" – Unlike "applicant for admission," the phrase "alien seeking admission" is not defined in Section 1225.  Under the view adopted by the government every "applicant for admission" is an "alien seeking admission." This would subject all unadmitted aliens to mandatory detention without bond whether they are located at the border or have spent months or years living in the interior.  Under that reading, "for purposes of immigration detention, the border is now everywhere." Buenrostro-Mendez, No. 25-20496, 2026 WL 323330 at *18 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting op.).

In contrast, the consensus district court view is that the phrase "alien seeking admission" does independent work and requires "active and ongoing conduct, such as physically attempting to come into the United States at a border

8

or port of entry[,]" Quispe, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.) (citations omitted), and does not apply to "noncitizens like [p]etitioner who have resided in the United States for years[,]" Patel, 2025 WL 3516865 at *5 (citations omitted).

As these district court cases and the Buenrostro-Mendez dissent have recognized, to adopt the government's position would, *inter alia*, negate the plain meaning of the text, ignore context and history, violate the rule against surplusage, and render the mandatory detention of "criminal aliens" under Section 1226(c) (as expanded last year by the Laken Riley Act) as arising from a redundant statutory provision. See Patel, 2025 WL 3516865 at *5 (citing Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *6 (E.D. Pa. Nov. 25, 2025) (Rufe, J.)); Buenrostro-Mendez, 2026 WL 323330 at *11–16 (Douglas, J., dissenting op.).

Here, Meeran was residing in the United States for approximately two years when he was re-arrested and re-detained. Consequently, a reading of Section 1225(b)(2)(A) against petitioner's circumstances reflects that this statute does not apply to him.[6]

---

[6] Meeran's pending asylum application does not make him an "alien seeking admission" or provide him with lawful entry to the United States; rather that application is to obtain a lawful means to remain here. Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 488 n.7 (S.D.N.Y. 2025).

9

At this point, Meeran's detention would be governed by Section 1226(a). Jennings, 583 U.S. at 288 (Alito, J., plurality op.). Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.' " Id. (quoting 8 U.S.C. § 1226(a)). Pending such decision, the Attorney General may: 1) "continue to detain the arrested alien"; and 2) "may release the alien on…bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or…conditional parole[.]" 8 U.S.C. § 1226(a)(1)–(2); see also 8 C.F.R. §§ 1003.19, 1236.1(c)(8), 1236.1(d)(1). "At a bond hearing, a noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.' " Quispe, 2025 WL 3537279, at *6 (quoting Nielsen v. Preap, 586 U.S. 392, 397–98 (2019)).

## 2. Meeran Will Be Released

The petitioner enjoys the protections of the Due Process Clause of the Fifth Amendment. J.G.G., 604 U.S. at 673. Whether Meeran's continued detention under 8 U.S.C. § 1225(b)(2)(A) violates procedural due process requires a consideration of: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the

government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Each factor favors Meeran.  First, his private interest is the interest of not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).  "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted).  Second, he has been detained erroneously under Section 1225(b) without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); see also Patel, 2025 WL 3516865, at *6 (citing Bethancourt Soto v. Soto, No. 25-CV-16200, --- F. Supp. 3d ----, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025); Quispe, 2025 WL 3537279, at *7 (citations omitted).  Third, the government's interest in detaining noncitizens "to ensure the appearance of aliens at future immigration proceedings and to prevent danger to the community" is important, but there is no indication that Meeran is a convicted criminal or engaged in any

11

criminal activity. See Quispe, 2025 WL 3537279, at *7.  In response to the petition, the government has not provided any information suggesting that Meeran is a flight risk.  Rather, upon entry to this country, the government released the petitioner on his own recognizance.  And they gave him a hearing date ten months into the future. Consequently, Meeran's continued detention without bond under Section 1225(b)(2)(A) violates his procedural due process rights. The court will therefore grant the petition for writ of habeas corpus.

Habeas courts "have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Boumediene v. Bush, 553 U.S. 723, 779 (2008).  Therefore, respondents shall immediately release Meeran from their custody because he was unlawfully detained without the opportunity for a bond hearing.[7]  See Kashranov v. Jamison, No. 2:25-CV-05555-JDW, 2025 WL 3188399, at *8 (E.D. Pa. Nov. 14, 2025) (Wolson, J).

Respondents, including DHS and ICE will be permanently enjoined from re-detaining Meeran under 8 U.S.C. § 1225(b)(2)(A). Id.  Respondents will be

---

[7] To the extent that Craig Lowe, Warden of Pike CCF is the only proper respondent in this matter, Lowe is acting as an agent of ICE and the government will be bound by the order. See Vadel v. Lowe, No. 3:25-CV-02452, 2025 WL 3772059, at *1 n.1 (M.D. Pa. Dec. 31, 2025).

12

temporarily enjoined from re-arresting Meeran for a period of 14 days to ensure that this habeas remedy is effective. Id. Respondents, including ICE, may not impose any other restrictions on Meeran's release, including any form of body-worn electronic monitoring. Meeran may move to reopen this matter if the government later seeks to detain him under Section 1226(a) and fails to schedule a timely bond hearing.

### 3. Attorneys' Fees and Costs

Finally, Meeran requests attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. The Third Circuit recently confirmed that a habeas proceeding challenging immigration detention under 28 U.S.C. § 2241 is a "civil action" for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), and that the EAJA "unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241." Michelin v. Warden Moshannon Valley Corr. Ctr., No. 24-2990, 2026 WL 263483, at *1–2, *10 (3d Cir. Feb. 2, 2026). Meeran will thus be permitted to file a motion for costs and fees pursuant to the EAJA within 30 days of the entry of judgment. 28 U.S.C. § 2412(d)(1)(B); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *7 (M.D. Pa. Feb. 13, 2026) (Wilson, J.).

## Conclusion

The petition for writ of habeas corpus under 28 U.S.C. § 2241 will be granted with provisions consistent with this memorandum.  An appropriate order follows.

Date: 2/26/26

_____
JUDGE JULIA K. MUNLEY
United States District Court